O’Neall, J.
delivered the opinion of the Court.
In this case, it has been supposed that the defendant, in the right of his wife, has an estate, for her life, in the whole tract of land lying east of the Three Runs. This depends upon the construction of the covenants by which Mr. Bour-deaux gave to Mrs. Mucklerath (afterwards Mrs. Miller) and her children, the use and possession of the plantation, on the east side. The term plantation has no precise, fixed, and definite single meaning — it may mean the whole body of land, (wood and cultivated,) which a man uses together for agricultural purposes ; or it may mean only that part which is cultivated. The sense in which it is used, depends very much on the context, or the subject matter to which it is applied.
In the recital of the covenant before us, a previous covenant is recited, whereby it was agreed that “ Jane Muckle-rath shall not be divested of, but shall continue to enjoy, during her natural life, quiet and peaceable possession of the plantation on which she noto resides, east of the said stream,” (the Lower Three Runs,) “ together rvith the house, outhouses, and appurtenances thereunto belonging, as also the use of as much land, on the east side of the said stream, during her natural life, as she may, for her oion individual purposes, have occasion to cultivate.” These latter words shew the sense in which the term plantation was used. It was not used in its broadest sense, but in the narrower one, by which it meant the cultivated land.
The covenant before us was intended, as it expresses, to extend the interest given to Jane, to her children by her former husband, Mucklerath, and also by her then husband, Miller, during their lives. It says that the “ use,possession, occupation and enjoyment,” shall not be limited to her life, but that such use, possession, occupation and enjoyment shall be extended to the lives of her children, or as long as they choose, collectively or individually, to retain the possession. Do these words impart a life estate, in the whole of the land east of the Three Runs? Surely not; they give a very qualified interest of occupancy. But the instrument does not *16 stop there. It says the possession is to continue “ so long as such children, or either of them, shall survive, and collective- ’ ly or individually, shall choose to remain in the occupancy, enjoyment and possession of the premises aforesaid, after the decease of the said Jane, with as much land adjoining' to the present improved plantation and buildings, fields and settlement, as he, she or they, at any time hereafter, may wish to clear and cultivate, in addition to the present clearing, for his, her or their own planting and cultivating, either collectively or individually.” How, after reading these words, any one can doubt that the use, possession, occupation and enjoyment of the plantation, covenanted to be allowed to Jane and her children, can be other than the cleared, cultivated and improved plantation or settlement, it is'hard for me to understand. The words giving it that confined meaning, are used; and then the covenantor tells the covenantees, in addition to this narrow use, I allow you to clear and cultivate, adjoining the improved settlement, as much land as you, for your own planting and cultivating, may need.
The instrument does not, however, stop at this plain expression of intention. It is stated by it, “ but it is not understood, nor is it the intent and meaning of these presents, that the extension, granted by this agreement, beyond the natural life of the said Jane, shall go further than what relates to the plantation, houses, out-houses and other improvements, on the said plantation, on the east side of the stream of the Lower Three Runs, with as much land adjoining to the present settlement, as the children of the said Jane, by her former husband, Robert Mucklerath, deceased, as also by her present husband, Daniel Miller, during their and each of their respective life times, may have occasion to occupy for cultivation, with as much timber for plantation purposes as may be necessary.” These words clearly shew that the life use, covenanted to be granted, was of the cleared land and buildings. Incidental thereto, the covenantor agrees they may clear adjoining as much as they may have occasion to occupy for cultivation, and with it, that they should have as much timber as was necessary for plantation purposes. These latter words, about the timber, plainly negative the notion, that a life estate was intended to be granted of the whole land, east of the Runs. If that had been so, no such covenant was necessary. For the law gave to the tenant, fire bote and fence bote.
Having gone through the covenant, and ascertained its meaning, how stands this case ? The old settlement has been abandoned, the defendant is now in possession nearly half a mile from it. He purchased from Mr. Patterson the reversionary interest in about 300 acres, including the old and the present settlement. He himself laid out the line, *17 separating him from the balance of the land. For Mr. Patterson told him to lay off as much as he wanted. Beyond this line, the plaintiff is in possession, under a purchase from'' Mr. Patterson. When his clearing approached the defendant’s line, he (the defendant) stopped it, and this is the trespass complained of. Stating the case, in this way, it is plain the defendant has no defence. He has the old and the new settlement, with much adjoining land. He has not entered upon the land to clear it. He has undertaken to say to the owner, the plaintiff, who, for the purposes of this case, is Bourdeaux, the covenan tor, under whom the defendant claims, you shall not clear your own land. To allow this, would make the tenant greater, in law and estate, than his landlord! Such an absurdity cannot exist. The most the defendant could ask, would be, as was done on the first trial, to leave it to the Jury to say, whether the land, which the plaintiff was about to clear, was necessary for the cultivation of the «defendant’s wife, or whether the timber was necessary for her plantation purposes. This, however, is entirely for the defendant’s advantage. If he does not choose to avail himself of it, his trespass is unjustified, without excuse, and without mitigation.
The motion to set aside the non-suit, is granted.
Richardson, J. and Evans, J. concurred.